IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANK L. ROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 25-53-MN |
| ) | |
| CENTENE CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Frank L. Ross ("Plaintiff"), who appears *pro se* and was granted permission to proceed *in forma pauperis*, is an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. (D.I. 6) He filed this action on January 13, 2025, alleging violations of his civil rights under 42 U.S.C. § 1983. (D.I. 3) The court proceeds to review and screen the matter pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A(a). For the reasons set forth below, the court recommends that the complaint be DISMISSED WITHOUT PREJUDICE.

**I.    BACKGROUND**

Plaintiff names seventeen defendants in the complaint, which alleges violations of his Eighth Amendment right against cruel and unusual punishment, deliberate indifference to his medical needs, and medical negligence claims under Delaware law. (D.I. 3) The court groups the seventeen defendants into five categories: (1) the "Contract Medical Providers" for the Delaware Department of Corrections ("DDOC"), comprised of Centene Corporation, Centurion of Delaware LLC, and VitalCore Health Strategies; (2) the "Non-Medical Prison Officials," which includes Commissioner Terra Taylor, former Commissioner Claire M. DeMatteis, former Commissioner Monroe B. Hudson, Jr., and Former Warden and DDOC Medical Bureau Chief Robert May; (3) the "Supervisory Medical Prison Officials," which include Dr. Awele Maduka-

Ezeh, Dr. Erskins, Medical Bureau Chief Michael Records, Scott Reynolds, and Jessica Martin; (4) the "Provider Prison Officials," which encompasses Ihouma Chuks and Flora Atangcho; and (5) the "Non-State Actors," comprised of Beebe Healthcare, Beebe Outpatient Surgery Center, and Dr. Richard Paul.

According to the complaint, Plaintiff underwent a minimally invasive prostate procedure at Beebe Healthcare on September 8, 2022, performed by urologist Richard Paul. Plaintiff experienced complications following the procedure and spent five days in the JTVCC infirmary before returning to his cell. On September 27, 2022, Plaintiff went back to the infirmary to receive treatment for MRSA and another infection in his bladder. He remained in the infirmary until October 5, 2022.

Beginning in December of 2022, Plaintiff experienced pain and difficulty urinating. He visited chronic care provider Ihuoma Chuks for treatment and wrote a letter to Dr. Paul that month. (D.I. 3, Ex. A) The following month, Plaintiff submitted two sick call request forms and wrote letters to Chuks and Robert May describing his medical issue. (*Id.*, Exs. B-E) On January 18, 2023, Plaintiff was told that he still had an infection in his bladder. (*Id.*, Ex. E at 1; Ex. F at 1)

Plaintiff filed a medical grievance on February 1, 2023. (*Id.*, Ex. F) On February 7, Plaintiff saw Dr. Paul, who recommended redoing the procedure performed in September. (*Id.*, Ex. G) Plaintiff subsequently wrote letters to Chuks, May, Dr. Maduka-Ezeh, Dr. Erskins, and the scheduling nurse asking them to expedite the process for scheduling his second procedure. (*Id.*, Exs. G-L)

Plaintiff refiled his medical grievance on March 6, 2023 using the correct form. (*Id.*, Ex. M) A follow-up with Dr. Paul the next day confirmed the need for a second surgical procedure.

(*Id.*, Ex. L) Plaintiff represented that Dr. Paul informed him the length of time in between follow-ups was contributing to his medical issues. (*Id.*, Ex. M)

Plaintiff's March 6 grievance was informally resolved in a report issued on March 21, 2023, which stated "Patient [is] aware he is scheduled to see urology. Would like to keep [grievance] open until seen[.]" (*Id.*) Plaintiff underwent his second prostate procedure on March 24, 2023 at Beebe Healthcare. After the procedure, Plaintiff remained in the infirmary for a month. While he was in the infirmary, Plaintiff signed off on his March 6 grievance, which was considered resolved due to the procedure performed on March 24. (*Id.*)

Plaintiff returned for a follow-up visit with Dr. Paul at Beebe Healthcare on May 23, 2023. (*Id.*, Ex. N) Although Plaintiff had feelings of urgency, a scan performed on his bladder revealed that it was empty. The following day, Plaintiff wrote letters to Dr. Paul and the JTVCC medical department expressing concern that he did not feel his bladder emptying. (*Id.*, Exs. N-O)

In June of 2023, Plaintiff wrote letters and submitted sick call requests asking to continue taking Tamsulosin, which he claimed was effective in treating his bladder issues. (*Id.*, Exs. P, Q, T) He also wrote letters and submitted a sick call request to see Dr. Paul again because his bladder was not functioning well. (*Id.*, Exs. R, S, U) During a visit with Dr. Paul on August 22, 2023, two blockages were discovered in Plaintiff's urinary tract. (*Id.*, Ex. W) On September 13, 2023, nurse practitioner Flora Atangcho informed Plaintiff that he was approved for a third surgical procedure. (D.I. 3 at 8)

Plaintiff filed a medical grievance on September 28, 2023. (*Id.*, Ex. Z) Plaintiff sent a letter to Dr. Paul on October 20 2023, asking him to expedite the process for his third procedure.

(*Id.*) The procedure originally scheduled for November 17, 2023 was postponed until December 21, 2023.

Plaintiff's second grievance was resolved in Plaintiff's favor on December 8, 2023, and Medical Bureau Chief Michael Records sent Plaintiff a letter ten days later confirming that the grievance was upheld and Plaintiff's administrative remedies were fully exhausted. (*Id.*, Exs. DD, FF) Plaintiff continued to experience similar symptoms after his third procedure, but he did not file another grievance.

Plaintiff requests compensatory and punitive damages, as well as an injunction precluding Defendants from continuing to delay and deny Plaintiff's medical treatment.

## II.   LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

4

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), a court may dismiss a complaint as frivolous if it depends on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Dooley*, 957 F.3d at 374 (internal citations and quotation marks omitted).

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) is identical to the legal standard used when deciding Federal Rule of Civil Procedure 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). A

5

complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.   DISCUSSION

Plaintiff's complaint focuses on alleged delays in the treatment of his prostate condition that appear to sound in medical negligence, which is insufficient to state a constitutional claim for deliberate indifference to his medical needs. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a constitutional deprivation). Plaintiff seeks relief pursuant to the Eighth Amendment proscription against cruel and unusual punishment, which requires prison officials to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). To set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the

"unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (internal citations and quotation marks omitted). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994).

## A. Failure to Exhaust Administrative Remedies

As a preliminary matter, Plaintiff has not exhausted his administrative remedies for events occurring after his third surgical procedure on December 21, 2023. Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

Although exhaustion is an affirmative defense, the court may *sua sponte* dismiss an action pursuant to Section 1915A when the failure to exhaust defense is obvious from the face of the complaint. *See Caiby v. Haidle*, 785 F. App'x 64, 65 (3d Cir. 2019). Here, Plaintiff's second grievance was fully exhausted in December of 2023, prior to Plaintiff's third procedure. Plaintiff did not file a subsequent grievance regarding events occurring during or after his third surgery.

Consequently, dismissal of the Section 1983 claim for failure to exhaust is warranted with respect to Plaintiff's allegations occurring on or after December 22, 2023.

### B. Claims Against the Contract Medical Providers

Plaintiff fails to state a claim for deliberate indifference to his medical needs against the Contract Medical Providers. To establish that a medical service contract provider is directly liable for alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [ ] policy or custom, and that the policy caused the constitutional violation [Plaintiff] allege[s]. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (explaining that, because *respondeat superior* or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). A corporate defendant "is only liable if its policies are so inadequate and ineffective that the mere decision to employ these policies demonstrates deliberate indifference on the part of the corporation." *McCray v. First State Med. Sys.*, 379 F. Supp. 2d 635, 638 (D. Del. 2005).

The instant complaint contains no averments specific to the Contract Medical Providers, let alone allegations of a policy or custom that demonstrates deliberate indifference to Plaintiff's medical needs. *See Natale*, 318 F.3d at 584; *Goodrich v. Clinton Cty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (concluding that policy makers were not liable for prison medical staff's alleged deliberate indifference to prisoner's serious medical needs because there was no underlying violation of prisoner's rights). Consequently, I recommend that the court dismiss Plaintiff's claims against the Contract Medical Providers without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## C. Claims Against the Non-Medical Prison Officials and Supervisory Medical Prison Officials

The complaint also fails to state a claim for deliberate indifference to medical needs against the Non-Medical Prison Officials or the Supervisory Medical Prison Officials based on their supervisory positions because there is no *respondeat superior* liability under Section 1983, and the complaint does not allege personal involvement by any of these defendants. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). Liability in a Section 1983 action is personal in nature and, to be liable, a defendant must have been personally involved in the wrongful conduct. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved[.]" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (internal citations and quotation marks omitted).

Plaintiff appears to raise claims for deliberate indifference to his medical needs against the Non-Medical Prison Officials or the Supervisory Medical Prison Officials. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103-05. To determine whether a supervisor is deliberately indifferent to a prisoner's medical needs under the Eighth Amendment,[1] the complaint must allege: "(1) the policy or procedures in effect at the time of the

---

[1] Plaintiff alleges deliberate indifference to his medical needs under both the Eighth and Fourteenth Amendments. The analysis of whether a supervisor may be held individually liable in a Section 1983 case is the same regardless of whether the Eighth or Fourteenth Amendment applies. *Compare Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014),

9

alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014) (citation omitted), *overruled on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

Even when liberally construing the complaint, there are no allegations of personal involvement, personal direction, or actual knowledge and acquiescence of an alleged constitutional violation by the Non-Medical Prison Officials or the Supervisory Medical Prison Officials. The complaint alleges Non-Medical Prison Official Robert May was aware of the alleged constitutional violations by virtue of Plaintiff's written correspondence. However, the complaint also alleges that Plaintiff regularly received medical care from Dr. Paul during this time. It is well-established that, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Consequently, the complaint does not plausibly allege that May had actual knowledge Plaintiff's medical needs were not being met. There are no specific allegations in the operative pleading directed towards the remaining Non-Medical Prison Officials, who appear to be named as defendants based only on their supervisory positions.

Plaintiff's allegations against the Supervisory Medical Prison Officials are similarly deficient. Plaintiff avers that he wrote to several of the Supervisory Medical Prison Officials, including Dr. Maduka-Ezeh, Dr. Erskins, and Records, to describe his medical complaints. But

---

*overruled on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015) (analyzing supervisory liability in an Eighth Amendment case) *with Andrews v. Kenney*, 2017 WL 2591931, at *3-4 (E.D. Pa. June 14, 2017) (applying the same analysis in a Fourteenth Amendment case).

prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner" who was already receiving medical care. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Here, the complaint alleges that Plaintiff received medical care from Dr. Paul and was treated in the prison infirmary on numerous occasions. There are no specific allegations in the complaint directed towards Supervisory Medical Prison Officials Scott Reynolds and Jessica Martin. For these reasons, I recommend that the court dismiss Plaintiff's claims against the Non-Medical Prison Officials and the Supervisory Medical Prison Officials without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### D. Claims Against the Provider Prison Officials

Plaintiff's allegations against the Provider Prison Officials fail to plausibly show that those individuals knew Plaintiff faced a substantial risk of serious harm and failed to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The complaint impliedly suggests that the Provider Prison Officials did not respond quickly or aggressively enough to Plaintiff's complaints, and the alleged delay exacerbated his condition. But "[a] prisoner does not have the right 'to choose a specific form of medical treatment,'" so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000)).

Plaintiff's claims against the Provider Prison Officials are not viable under Section 1983 because the allegations either sound in negligence or complain of treatment with which Plaintiff disagrees. Medical malpractice allegations sounding in negligence are not sufficient to establish a constitutional violation. *White*, 897 F.2d at 108-09 (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a constitutional

11

deprivation). The complaint also fails to plausibly allege a claim for deliberate indifference by the Provider Prison Officials because the pleading discloses that Plaintiff received continuing care, including three surgeries and at least five off-site follow-up visits over the course of approximately fifteen months. Plaintiff's position that more should be done to treat his condition is insufficient to plausibly assert a constitutional violation. *Estelle*, 429 U.S. at 107; *see also Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.") (quotation marks omitted). Consequently, I recommend that the court dismiss Plaintiff's medical needs claims against the Provider Prison Officials pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(l).

### E. Claims Against the Non-State Actors

Plaintiff cannot state a Section 1983 claim for deliberate indifference to his medical needs under the Eighth Amendment against the Non-State Actors precisely because those defendants are not persons acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (1988). For private parties like the Non-State Actors to be held liable under Section 1983, a plaintiff must allege facts sufficient to show that the private party engaged in a conspiracy with state actors to deprive him of his constitutional rights. *See Dennis v. Sparks*, 449 U.S. 24 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The complaint in this case lacks allegations that Defendants are state actors or that they engaged in a conspiracy with state actors to deprive Plaintiff of his rights protected by the Constitution.

To the extent Plaintiff seeks to raise a medical negligence claim against the Non-State Actors, he must comply with the requirements of Delaware's Health Care Negligence Insurance and Litigation Act. 18 *Del. C.* §§ 6801-6865; *see Nash v. Akinbayo*, C.A. No. 18-677-MN, 2019

WL 4393159, at *10 (D. Del. Sept. 13, 2019) (dismissing Delaware state medical negligence claim for failure to attach an affidavit of merit to the complaint). When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: "(1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." *Bonesmo v. Nemours Found.*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 *Del. C.* § 6853. At the time he filed his complaint, Plaintiff did not submit an affidavit of merit as to each defendant signed by an expert witness. 18 *Del. C.* § 6853(a)(1). Consequently, Plaintiff's claim for medical negligence against the Non-State Actors fails to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court issue an Order in the form set forth below:

### ORDER

At Wilmington this __th day of _____, 2025, IT IS ORDERED that:

1. The Report and Recommendation issued on May 2, 2025 is **ADOPTED**.

2. Plaintiff's claims for medical negligence and violations of 42 U.S.C. § 1983 are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

3. Plaintiff is granted leave until on or before _____, 2025 to file an amended complaint remedying the deficiencies noted in the Report and Recommendation. The case will be closed should Plaintiff fail to timely file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be limited to ten (10) double-spaced pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 2, 2025

                                                Sherry R. Fallon
                                              UNITED STATES MAGISTRATE JUDGE